IN THE SUPREME COURT OF THE STATE OF DELAWARE

CALIFORNIA STATE TEACHERS'
RETIREMENT SYSTEM, NEW YORK
CITY EMPLOYEES' RETIREMENT
SYSTEM, NEW YORK CITY POLICE
PENSION FUND, POLICE OFFICERS'
VARIABLE SUPPLEMENTS FUND,
POLICE SUPERVISOR OFFICERS'
VARIABLE SUPPLEMENTS FUND,
NEW YORK CITY FIRE DEPARTMENT
PENSION FUND, FIRE FIGHTERS'
VARIABLE SUPPLEMENTS FUND,
FIRE OFFICERS' VARIABLE
SUPPLEMENTS FUND, BOARD OF
EDUCATION RETIREMENT SYSTEM
OF THE CITY OF NEW YORK,
TEACHERS' RETIREMENT SYSTEM OF
THE CITY OF NEW YORK, NEW YORK
CITY TEACHERS' VARIABLE
ANNUITY PROGRAM, AND INDIANA
ELECTRICAL WORKERS PENSION
TRUST FUND IBEW,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. 295, 2016

Court Below:

Court of Chancery
of the State of Delaware

C.A. No. 7455-CB

      Plaintiffs Below,
      Appellants,

   v.

AIDA M. ALVAREZ, JAMES I. CASH,
JR., ROGER C. CORBETT, DOUGLAS N.
DAFT, MICHAEL T. DUKE, GREGORY
B. PENNER, STEVEN S. REINEMUND,
JIM C. WALTON, S. ROBSON WALTON,
LINDA S. WOLF, H. LEE SCOTT, JR.,
CHRISTOPHER J. WILLIAMS, JAMES
W. BREYER, M. MICHELE BURNS,
DAVID D. GLASS, ROLAND A.
HERNANDEZ, JOHN D. OPIE, J. PAUL
REASON, ARNE M. SORENSON, JOSE
H. VILLARREAL, JOSE LUIS
RODRIGUEZMACEDO RIVERA,
EDUARDO CASTRO-WRIGHT,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

THOMAS A. HYDE, THOMAS A. MARS,   §
JOHN B. MENZER, EDUARDO F.   §
SOLORZANO MORALES, AND LEE   §
STUCKY,   §
  §
  §
      Defendants Below,   §
      Appellees,   §
  §
WAL-MART STORES, INC.,   §
  §
      Nominal Defendant Below,   §
      Appellee.

Submitted: November 1, 2017
Decided: January 25, 2018

Before **VALIHURA**, **VAUGHN** and **TRAYNOR**, Justices; **WHARTON** and **CLARK,** Judges[*] constituting the Court *en Banc*.

Upon appeal from the Court of Chancery. **AFFIRMED**.

Stuart M. Grant, Esquire, (*argued*), Michael J. Barry, Esquire, and Nathan A. Cook, Esquire, Grant & Eisenhofer, P.A., Wilmington, Delaware; Christine S. Azar, Esquire, Ryan T. Keating, Esquire, and Ned Weinberger, Esquire, Labaton Sucharow LLP, Wilmington, Delaware. Of Counsel: Daniel Girard, Esquire, Amanda Steiner, Esquire, Dena Sharp, Esquire, Adam Polk, Esquire, and Jordan Elias, Esquire, Girard Gibbs LLP, San Francisco, California; Thomas A. Dubbs, Esquire, Louis Gottlieb, Esquire, and Jeffrey A. Dubbin, Esquire, Labaton Sucharow LLP, New York, New York; Frederic S. Fox, Esquire, Hae Sung Nam, Esquire, Donald R. Hall, Esquire and Jeffrey P. Campisi, Esquire, Kaplan Fox & Kilsheimer LLP, New York, New York, for Appellants.

Donald J. Wolfe, Jr., Esquire, Steven C. Norman, Esquire and Tyler J. Leavengood, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware. Of Counsel: Theodore J. Boutrous, Jr., Esquire (*argued*), and Alexander K. Mircheff, Esquire, Gibson Dunn & Crutcher LLP, Los Angeles, California; Mark A. Perry, Esquire, Gibson Dunn & Crutcher LLP, Washington, D.C., for Appellees.

David C. McBride, Esquire, and Nicholas J. Rohrer, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Theodore N. Mirvis, Esquire, and

---

[*] Sitting by designation pursuant to Del. Const. Art. IV §§ 12 and 38 and Supreme Court Rules 2 and 4 (a) to fill up the quorum as required.

Joshua J. Card, Esquire, Wachtell, Lipton, Rosen & Katz, New York, New York; Liz Dougherty, Esquire, Business Roundtable, Washington, D.C., for Amicus Curiae, the Business Roundtable.

Kathaleen St. J. McCormick, Esquire, and Nicholas J. Rohrer, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware.  Of Counsel:  Amanda F. Davidoff, Esquire, Judson O. Littleton, Esquire, and Lee J.F. Deppermann, Esquire, Sullivan & Cromwell LLP, Washington, D.C.; Steven P. Lehotsky, Esquire, and Janet Galeria, Esquire, U.S. Chamber Litigation Center, Inc., Washington, D.C.; Deborah R. White, Esquire, Retail Litigation Center, Inc., Arlington, Virginia, for Amici Curiae, the Chamber of Commerce of the United States of America and Retail Litigation Center, Inc.

**VALIHURA**, Justice:

The Court of Chancery initially found that Wal-Mart stockholders who were attempting to prosecute derivative claims in Delaware could no longer do so because another court, a federal court in Arkansas, had reached a final judgment on the issue of demand futility first, and the stockholders were adequately represented in that action. But the derivative plaintiffs in Delaware assert that applying issue preclusion in this context violates their Due Process rights.

This dispute implicates complex questions of law and policy, including: the relationship among competing derivative plaintiffs (and whether they may be said to be in "privity" with one another); whether failure to seek board-level company documents renders a derivative plaintiff's representation inadequate; policies underlying issue preclusion, such as preventing duplicative litigation and promoting judicial economy; and our obligation to respect the judgments of other jurisdictions.

The Chancellor's Original Opinion[1] granting Defendants'[2] motion to dismiss, issued May 13, 2016, did not expressly focus on the Delaware Plaintiffs'[3] Due Process arguments as a separate issue.  We asked the Chancellor to supplement his opinion by focusing on the Due Process concerns.  In his Supplemental Opinion,[4] issued July 25, 2017, the Chancellor reiterated that, under the present state of the law, the subsequent plaintiffs' Due Process rights were not violated.  Nevertheless, he advocates a different approach.  Though acknowledging that no federal court has reached the same conclusion, the Chancellor suggested that we adopt a rule that a judgment in a derivative action cannot bind a corporation or other stockholders until the suit has survived a Rule 23.1 motion to dismiss.

---

[1] *In re Wal-Mart Stores Inc. Del. Deriv. Litig.* (*Orig. Op.*), 2016 WL 2908344 (Del. Ch. May 13, 2016).

[2] The individual defendants (appellees) fall into three groups: (1) all fifteen directors of Wal-Mart Stores, Inc. ("Wal-Mart" or the "Company"), an international retail corporation headquartered in Arkansas and incorporated in Delaware, at the time the original derivative complaints were filed in Arkansas federal court and the Delaware Court of Chancery in 2012 (Aida M. Alvarez, James W. Breyer, M. Michele Burns, James I. Cash Jr., Roger C. Corbett, Douglas N. Daft, Michael T. Duke, Gregory B. Penner, Steven S. Reinemund, H. Lee Scott Jr., Arne M. Sorensen, Jim C. Walton, S. Robson Walton, Christopher J. Williams, and Linda S. Wolf); (2)  Wal-Mart directors at the time of the alleged misconduct who had stopped serving as directors by the time the complaints were filed (David D. Glass, Roland A. Hernandez, John D. Opie, J. Paul Reason, and Jose H. Villareal); and (3) former executives of Wal-Mart or WalMex (José Luis Rodriguezmacedo Rivera, Eduardo Castro-Wright, Thomas A. Hyde, Thomas A. Mars, John B. Menzer, Eduardo F. Solorzano Morales, and Lee Stucky).  Wal-Mart is the nominal defendant. Collectively, they are "Defendants."

[3] The Delaware Plaintiffs, the appellants, are the California State Teachers' Retirement System, New York City Employees' Retirement System, New York City Police Pension Fund, Police Officers' Variable Supplements Fund, Police Supervisor Officers' Variable Supplements Fund, New York City Fire Department Pension Fund, Fire Fighters' Variable Supplements Fund, Fire Officers' Variable Supplements Fund, Board of Education Retirement System of the City of New York, Teachers' Retirement System of the City of New York, New York City Teachers' Variable Annuity Program, and Indiana Electrical Workers Pension Trust Fund IBEW.

[4] *In re Wal-Mart Stores Inc. Del. Deriv. Litig.* (*Supp. Op.*), 167 A.3d 513 (Del. Ch. 2017).

The Chancellor believes that such a rule would better protect derivative plaintiffs' Due Process rights, even when they were adequately represented in the first action.

We decline to adopt the Chancellor's recommendation that we refuse to give preclusive effect to other courts' decisions on demand futility and, instead, AFFIRM the Original Opinion granting Defendants' motion to dismiss for the reasons discussed below, including because, under the governing federal law, there is no Due Process violation.

## I.

The facts of this case follow the familiar pattern when news reports expose scandal at a corporation.[5] After the *New York Times* reported in April 2012 on an alleged bribery scheme and cover-up perpetrated by executives at Wal-Mart's Mexican unit,[6] Wal-Mart de Mexico ("WalMex"), derivative suits followed. The Arkansas Plaintiffs[7] filed eight derivative complaints in the United States District Court for the Western District of Arkansas, and seven derivative actions were filed in the Delaware Court of Chancery.[8] The claims in Arkansas and Delaware were similar: they were primarily for breaches of

---

[5] A more detailed description of the procedural and factual background can be found in our order remanding this case, *Cal. State Teachers' Ret. Sys. v. Alvarez* (*Remand Or.*), 2017 WL 6421389 (Del. Jan. 18, 2017) (the "Remand Order"), and in the Court of Chancery's Original Opinion. *See Orig. Op.*, 2016 WL 2908344. This opinion assumes familiarity with those opinions and focuses on the issues raised in our Remand Order.

[6] *See* David Barstow, *Vast Mexico Bribery Case Hushed Up by Wal-Mart After Top-Level Struggle*, N.Y. Times (Apr. 21, 2012), http://www.nytimes.com/2012/04/22/business/at-wal-mart-in-mexico-a-bribe-inquiry-silenced.html.

[7] The nonparty Arkansas Plaintiffs include John Cottrell, William Cottrell, Larry Emory, Kathryn Johnston Lomax, Louisiana Municipal Police Employees' Retirement System, Andrew Richman, and Elizabeth Tuberville. *See Cottrell v. Duke* (*Cottrell II*), 829 F.3d 983 (8th Cir. 2016).

[8] *Orig. Op.*, 2016 WL 2908344, at *1, *7.

fiduciary duty related to the Wal-Mart board's oversight of WalMex, though the litigation in Arkansas included additional claims under Sections 14(a) and 29(b) of the Securities Exchange Act of 1934, and a claim for contribution and indemnity.[9] The Defendants filed motions seeking to have all litigation proceed in one forum[10] and to stay the Arkansas litigation.[11] The Arkansas court initially stayed its proceedings pending the litigation in Delaware.[12]

But the situation took a turn from the ordinary when the litigation over a books-and-records demand filed pursuant to 8 *Del. C.* § 220 ("Section 220") became unusually contentious after the plaintiff alleged deficiencies in the Company's first production,

---

[9] *See Orig. Op.*, 2016 WL 2908344, at *9-10; Consolidated Verified Shareholder Derivative Complaint, *In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.*, No. 4:12-cv-4041 (W.D. Ark. May 31, 2013), at B100-03 [hereinafter Arkansas Complaint]. In general, citations to the record have been shortened to a short name of the document, "at," and the appendix page number. Page numbers beginning with "A" refer to the Appendix to the Delaware Plaintiffs' Opening Brief on Appeal; and page numbers beginning with "B" refer to the Appendix to the Defendants' Answering Brief. References to documents filed in the consolidated Arkansas federal district court action, *In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.*, No. 4:12-cv-4041, are noted by "Ark. Litig."; documents filed in the consolidated Delaware Court of Chancery derivative litigation, *In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*, C.A. Nos. 7455-CS & 7455-CB, are noted by "Del. Deriv. Litig."; and documents filed in the Delaware Court of Chancery Section 220 litigation, *Ind. Elec. Workers Pension Tr. Fund IBEW v. Wal-Mart Stores, Inc.*, C.A. No. 7779-CB, are noted by, "Del. § 220 Litig.," and "Del. § 220 Litig. Appeal" for the appeal to this Court.

[10] *See* Defendants' Brief in Support of Their Motion to Proceed in One Jurisdiction, Delaware Deriv. Litig. (June 9, 2012), at B013.

[11] *See* Co-Lead Plaintiffs' Opposition to Defendants' Motion to Stay and for Extension of Time to Respond to the Complaint and Defendants' Notice Filed July 13, 2012, Arkansas Litig. (July 17, 2012), at A609 [hereinafter Stay Opposition]; Reply Memorandum in Support of Wal-Mart's Motion to Stay the Entire Action, Arkansas Litig. (July 26, 2012), at A632; Transcript of Hearing on Motion to Stay, Arkansas Litig. (Sept. 6, 2012), at B163 [hereinafter Stay Hearing Transcript].

[12] *See In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.* (*Ark. Stay Order*), 2012 WL 5935340, at *1 (W.D. Ark. Nov. 27, 2012), *superseding*, 2012 WL 5897181 (W.D. Ark. Nov. 20, 2012).

received August 1, 2012.[13] This dispute included a trial,[14] an appeal to this Court,[15] and a subsequent motion for contempt against Wal-Mart.[16] In all, the Section 220 litigation lasted nearly three years.

The Delaware Plaintiffs attempted to obtain the Company's books and records because then-Chancellor Strine had commented, "I don't know why the plaintiffs would ever wish to proceed" without first obtaining additional documentary evidence.[17] He added, "[t]here is everything about the context of this case which requires great care and pleading,"[18] and he urged the Delaware Plaintiffs to "take a sincere look at the books and records and file the strongest possible complaint that [they] could."[19] The Arkansas Plaintiffs were aware of the Chancellor's warning.[20]

In the meantime, as the litigation over Wal-Mart's document production dragged on, the Eighth Circuit vacated the Arkansas federal district court's stay out of concern for

---

[13] *See* Order, Del. Deriv. Litig. (Sept. 5, 2012), *available via File&Serve*. The plaintiff in the Section 220 action, Indiana Electrical Workers Pension Trust Fund IBEW ("Indiana Electrical Workers"), did not file one of the original seven Delaware derivative complaints.

[14] *See Ind. Elec. Workers Pension Tr. Fund IBEW v. Wal-Mart Stores, Inc.*, 2013 WL 5636296 (Del. Ch. Oct. 15, 2013) (Order).

[15] *See Wal-Mart Stores, Inc. v. Ind. Elec. Workers Pension Tr. Fund IBEW*, 95 A.3d 1264 (Del. 2014).

[16] *See* Transcript of Oral Argument on Plaintiffs' Motion for Order of Civil Contempt and Rulings of the Court, Del. § 220 Litig. (May 7, 2015), at B230.

[17] Transcript of Hearing on Leadership, Del. Deriv. Litig. (July 16, 2012), at A55.

[18] *Id.* at A53.

[19] *Id.* at A56.

[20] *See, e.g.*, Stay Opposition, *supra* note 4, at A617 (noting that "[t]here is unlikely to be an operative complaint in Delaware for at least several months because the Delaware court has directed the plaintiffs to seek certain corporate documents under Delaware law.").

the stalled Section 14(a) claim.[21] The Eighth Circuit concluded that the district court's continued, blanket abstention was not proper under the *Colorado River* doctrine because the "Delaware and Federal Proceedings are not parallel" given that "Delaware courts have no jurisdiction to directly address the merits of the [Arkansas] Plaintiffs' Securities Act claims."[22] But the Eighth Circuit noted that, on remand, the district court "may impose a more finite and less comprehensive stay, if it concludes that such a stay properly balances the rights of the parties and serves the interests of judicial economy."[23]

Back at the Arkansas district court, the Defendants modified their stay request and asked for a stay that would expire upon the Delaware court's ruling on demand futility. They argued that this more limited stay would thus satisfy the Eighth Circuit's directive.[24] But the Arkansas court denied the Defendants' motion.[25] The Defendants then moved to dismiss the Arkansas Complaint for failure to plead demand futility under Federal Rule of Civil Procedure 23.1.[26]

---

[21] *Cottrell v. Duke* (*Cottrell I*), 737 F.3d 1238, 1242-43, 1245 (8th Cir. 2013).

[22] *Id.* at 1245; *see also id.* at 1240 (explaining that, "[i]n *Colorado River Water Conservation District v. United States*, the United States Supreme Court held that exceptional circumstances may permit a federal court to refrain from hearing a case and instead defer to a concurrent, parallel state-court proceeding." (citing 424 U.S. 800 (1976))).

[23] *Id.* at 1249.

[24] *See* Memorandum in Support of Wal-Mart's Renewed Motion for a Limited Stay of this Action, Ark. Litig. (Jan. 10, 2014), at A666; Reply in Support of Wal-Mart's Renewed Motion for a Limited Stay of this Action, Ark. Litig. (Feb. 18, 2014), at A682-83.

[25] *In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.* (*Ark. Stay Denial Order*), 2014 WL 12700619, at *2 (W.D. Ark. June 4, 2014).

[26] *See* Memorandum in Support of Defendants' Motion to Dismiss for Failure to Establish Demand Futility, Ark. Litig. (July 3, 2014), at A378.

The Delaware Plaintiffs had expressed concern that, if the Arkansas court ruled first and found demand futility lacking, the Defendants were likely to argue in Delaware that the Arkansas court's ruling on demand futility should have preclusive effect through the doctrine of "collateral estoppel," also known as "issue preclusion" (used here interchangeably).[27] The Delaware Plaintiffs also knew that the Arkansas court had warned in its June 4, 2014, order denying Defendants' stay that "[i]t is likely that the first decision on demand futility will be entitled to collateral estoppel effect."[28] Yet the Delaware Plaintiffs refrained from intervening or otherwise expressing their concerns to the Arkansas

---

[27] *See, e.g.*, Letter from Stuart Grant to the Chancellor, Del. § 220 Litig. (Sept. 3, 2014), at 2, *available via File&Serve* (urging the Chancellor to expedite proceedings) ("[T]here is a severe risk that, if demand futility is not found in the Arkansas proceedings, the Defendants will likely assert in this Court that the Arkansas decision is entitled to collateral estoppel in the Delaware Derivative Action." (citing *Pyott v. La. Mun. Police Emps.' Ret. Sys.* (*Pyott II*), 74 A.3d 612 (Del. 2014))); Indiana Electrical Workers' Motion for Expedited Oral Argument and Decision, Del. § 220 Litig. Appeal (June 6, 2014), at B161 ("If the Arkansas district court concludes that demand is not excused, the Plaintiffs in the Delaware Derivative Litigation, including Plaintiff in this appeal, face a severe risk that the Arkansas decision will have collateral estoppel effect in Delaware.").

[28] *Ark. Stay Denial Order*, 2014 WL 12700619, at *2.

court.[29]  On March 31, 2015, the Arkansas court granted Defendants' motion to dismiss, with prejudice.[30]

On May 1, 2015, nearly a month after the Arkansas dismissal, the Delaware Plaintiffs amended the operative Delaware Complaint, asserting a single derivative claim for breach of fiduciary duty.  As anticipated, Defendants moved to dismiss.  And, as also anticipated, Defendants argued that the Arkansas decision collaterally estopped the

---

[29] Our Remand Order did not suggest that plaintiffs had an *obligation* to intervene in the Arkansas action.  *See Remand Or.*, 2017 WL 6421389 at *4 ("[T]here is much force in the suggestion that the Delaware Plaintiffs should have sought to intervene in the Arkansas court to protect their interests . . . ."); *see also Richards v. Jefferson Cty.*, 517 U.S. 793, 800 n.5 (1996) ("The general rule is that '[t]he law does not impose upon a person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger.'" (quoting *Chase Nat. Bank v. Norwalk*, 291 U.S. 431, 441 (1934))).  The Delaware Plaintiffs insist that they could not have intervened in Arkansas given that they did not yet have all of the documents that they felt they needed to file a complaint.  *See* Oral Argument before the Delaware Supreme Court (Nov. 1, 2017), at 1:44, https://livestream.com/accounts/5969852/events/7894380/videos/165264607 [hereinafter Oral Argument].  However, although formal intervention is not required, there were other potential avenues to ensure that they would not be precluded, or at least have a more compelling argument before this Court that the Arkansas Plaintiffs failed to adequately represent them.  Such measures include filing a statement of interest, *see, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834, 841 (8th Cir. 2009) (affirming denial of motion to intervene but referring to Fed. R. Civ. P. 24(c) as providing for the filing of a statement of interest), and participating as amici curiae to inform the Arkansas court of their concerns.  Though such other measures are not required either, we simply note that Delaware Plaintiffs' awareness of the potential for collateral estoppel, combined with their failure to coordinate with the Arkansas Plaintiffs and failure to express their concerns to the Arkansas court, suggest that all the equities may not favor the Delaware Plaintiffs here.  *See also Dana v. Morgan*, 232 F. 85, 91 (2d Cir. 1916) (rejecting contention that plaintiff had "not had his day in court" in view of his knowledge of the pendency of another suit and noting that he could have intervened to "inform[ ] the court of anything he deemed important").

[30] *In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.*, 2015 WL 1470184, at *10 (W.D. Ark. Mar. 31, 2015) (order), *amended by*, 2015 WL 13375767, at *1, *10 (W.D. Ark. Apr. 3, 2015), *enforced*, 2015 WL 1928779 (W.D. Ark. Apr. 7, 2015) (judgment) (enforcing motion to dismiss, with prejudice), *aff'd*, *Cottrell II*, 829 F.3d 983.

8

Delaware Plaintiffs from relitigating the issue of demand futility. They also contended that, if not precluded, Delaware Plaintiffs failed to plead demand futility.

The Court of Chancery granted Defendants' motion to dismiss based on issue preclusion. In determining the preclusive effect of the Arkansas federal court's dismissal, the Court of Chancery looked to federal common law, which the Chancellor determined looks to the law of the rendering state in which the federal court exercised diversity jurisdiction (in this case, Arkansas).[31] Thus, the trial court found that Arkansas state law governed, "[s]ubject to Constitutional standards of due process."[32] The Chancellor held that Defendants satisfied the requisite elements for preclusion under Arkansas law, including privity.[33]

The Chancellor also observed that "[a]pplying the privity requirement to derivative actions involving two different stockholder plaintiffs raises the question [of] whether the required privity is between the two stockholders, or between each stockholder and the

---

[31] *See Orig. Op.*, 2016 WL 2908344, at *1, *8 ("Under federal common law, a federal court sitting in diversity jurisdiction will apply the preclusion law of the state in which it sits." (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001))). The Arkansas Complaint invoked diversity jurisdiction under 28 U.S.C. § 1332(a)(2), as well as federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a). *See* Arkansas Complaint, *supra* note 9, at B039.

[32] *Orig. Op.*, 2016 WL 2908344, at *1. In our Remand Order, we observed that "[t]he United States Supreme Court has made clear that the preclusive effect of a federal court judgment is determined by federal common law, *subject to due process limitations*." *See Remand Or.*, 2017 WL 6421389, at *6 (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).

[33] *Orig. Op.*, 2016 WL 2908344, at *9 (citing *Ark. Dep't of Human Servs. v. Dearman*, 842 S.W.2d 449, 452 (Ark. Ct. App. 1992) (en banc)).

9

corporation."[34] He agreed with the view that the first stockholder plaintiff does not represent the second stockholder plaintiff. Rather, "both plaintiffs sue on behalf of the corporation and are essentially interchangeable."[35] The Chancellor summarized his conclusions on privity as follows:

> [T]he overwhelming majority of decisions in other jurisdictions have found privity between different stockholder plaintiffs in derivative actions on the premise that the corporation is the real party in interest [in] both actions, a premise that the Arkansas Supreme Court has recognized expressly. The Restatement is inconclusive, and public policy arguments exist on both sides of the privity question. Taking all these points into consideration, it is my opinion that Arkansas courts likely would find that the privity requirement is satisfied here because that result accords with the clear weight of authority and resonates with the policy in Arkansas of using preclusion to ensure that issues are litigated only once.[36]

He observed that "most courts addressing the issue have concluded that the corporation is bound by the results of the first judgment in subsequent litigation, even if the result is to preclude a different stockholder's subsequent derivative claim."[37] Regarding federal Due Process concerns, the Court of Chancery suggested that scrutinizing the adequacy of the prior representation serves as a proxy for ensuring that plaintiffs' Due Process rights are protected.[38] Here, the Chancellor found that the Arkansas Plaintiffs were adequate

---

[34] *Id.* at *12.

[35] *Id.* at *13.

[36] *Id.* at *17. Because no court in Arkansas had squarely decided whether privity exists among successive derivative plaintiffs, the Chancellor looked in part to the Restatement (Second) of Judgments (Am. L. Inst. 1982) [hereinafter Restatement], as he determined Arkansas courts would for unsettled questions of issue preclusion law. *See id.* at *13-17.

[37] *Id.* at *13.

[38] *Id.* at *17 ("Due process under the United States Constitution requires that a judicial procedure 'fairly insures the protection of the interests of absent parties who are to be bound by it.' One

representatives and, accordingly, implied that there was no Due Process violation.

On appeal, Delaware Plaintiffs argue that the Court of Chancery erred in finding: (a) privity between Arkansas and Delaware Plaintiffs; (b) adequate representation by the Arkansas Plaintiffs; and (c) that the issue of demand futility was "actually litigated" in Arkansas. They also argue that the Court of Chancery violated their Due Process rights, including by finding: (i) privity; and (ii) adequacy of representation.[39] We review the trial court's dismissal based on issue preclusion, and its interpretation of federal Due Process principles, *de novo*.[40]

We first considered this appeal last spring, but we postponed a final ruling because the Delaware Plaintiffs' Due Process arguments gave us pause. In asserting that the Court of Chancery had violated their Due Process rights by finding privity between the Arkansas and Delaware plaintiffs, the Delaware Plaintiffs rely on Vice Chancellor Laster's opinion in *EZCORP*,[41] which the Chancellor had not addressed in his Original Opinion, likely

---

requirement for such procedures is that the absent parties 'are in fact adequately represented by parties who are present.'" (quoting *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940))). The Chancellor addressed the Due Process issue solely by examining the adequacy of representation. *See id.* \*17-23.

[39] Delaware Plaintiffs' Opening Br. at 23 ("[T]he Due Process Clause and Restatement both require two separate elements – the authority to act as a representative plaintiff [*i.e.*, through privity] *and* adequacy of representation.").

[40] *See Cohen v. State ex rel. Stewart*, 89 A.3d 65, 86 (Del. 2014) ("This Court reviews claims of violations of constitutional rights *de novo*."); *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000) (noting that whether a tribunal was "barred by *res judicata* or collateral estoppel" from deciding certain issues "raises a question of law that this Court reviews *de novo*").

[41] *In re EZCORP Inc. Consulting Agreement Deriv. Litig.*, 130 A.3d 934 (Del. Ch. 2016).

because the Delaware Plaintiffs had submitted the Court of Chancery's opinion in *EZCORP* to the Chancellor *after* completion of the motion to dismiss briefing.

In *EZCORP*, a plaintiff filed a derivative complaint against the outside directors of EZCORP. Between the briefing and argument on the defendants' motion to dismiss, the plaintiff proposed a voluntary dismissal of the complaint without prejudice. The defendants objected and sought a dismissal with prejudice "as to the world."[42] Applying Court of Chancery Rule 15(aaa),[43] the trial court ruled that the complaint should be dismissed with prejudice, but only as to the named plaintiff.[44] In dicta, the Court of Chancery also observed that, both as a matter of Delaware law[45] and Due Process, a derivative plaintiff may not bind a later derivative plaintiff unless and until the first derivative plaintiff survives a motion to dismiss, or the board of directors has given the plaintiff authority to proceed by declining to oppose the suit.[46]

The *EZCORP* decision relies on the dual, or two-fold, nature of derivative litigation,

---

[42] *Id.* at 940, 942.

[43] Del. Ct. Ch. R. 15(aaa) ("In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances.").

[44] *EZCORP*, 130 A.3d at 942-43.

[45] *Id.* at 943-46. However, in his Supplemental Opinion, the Chancellor viewed Delaware law as "unsettled on this issue." *Supp. Op.*, 167 A.3d at 524 n.60 (noting that "the Court of Chancery is divided on the privity issue as a matter of Delaware law" (quoting *Pyott v. La. Mun. Police Emps.' Ret. Sys. (Pyott II)*, 74 A.3d 612, 618 (Del. 2013))).

[46] *EZCORP*, 130 A.3d at 947-48 (citing *Smith v. Bayer Corp.*, 564 U.S. 299 (2011)).

noting that the key distinction between the first and second phases of a derivative action is that "the first phase of the derivative action [is one] in which the stockholder sues individually to obtain authority to assert the corporation's claim."[47] The Vice Chancellor reasoned that, "until the derivative action passes the Rule 23.1 stage, the named plaintiff does not have authority to sue on behalf of the corporation or anyone else."[48]

Thus, in *EZCORP*, the Vice Chancellor suggested that binding subsequent derivative plaintiffs to a dismissal based on demand futility in a case where they were not parties "deprive[s] them of the due process of law guaranteed by the Fourteenth Amendment."[49] The Vice Chancellor relied on the United States Supreme Court decision in *Smith v. Bayer Corp.*,[50] which suggested that, as a matter of Due Process, "[n]either a

---

[47] *Id.* at 945; *see also Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990) ("The nature of the derivative action is two-fold. 'First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it.'" (quoting *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984))); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del. 1981) (describing "'two phases' of a derivative suit, the stockholder's suit to compel the corporation to sue and the corporation's suit"); *Ross v. Bernhard*, 396 U.S. 531, 534-35 (1970) (describing "the dual nature of the stockholder's action: first, the plaintiff's right to sue on behalf of the corporation and, second, the merits of the corporation claim itself.").

[48] *EZCORP*, 130 A.3d at 945; *see also id.* at 943 ("As a matter of Delaware law, a stockholder whose litigation efforts are opposed by the corporation does not have authority to sue on behalf of the corporation until there has been a finding of demand excusal or wrongful refusal . . . ." (citing *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993))); *id.* at 944 ("The right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand would be futile." (quoting *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988))).

[49] *Id.* at 947 (quoting *Richards*, 517 U.S. at 797).

[50] 564 U.S. 299 (2011).

13

proposed class action nor a rejected class action may bind nonparties."[51] The Vice Chancellor believed that the same logic should apply to derivative actions that do not adequately plead demand futility. Thus, he stated that, "just as the Due Process Clause prevents a judgment from binding absent class members before a class has been certified, the Due Process Clause likewise prevents a judgment from binding the corporation or other stockholders in a derivative action until the action has survived a Rule 23.1 motion to dismiss, or the board of directors has given the plaintiff authority to proceed by declining to oppose the suit."[52] The Court of Chancery's Original Opinion did not expressly discuss *Bayer*.

In response, Defendants argue that this Court, in *Pyott II*,[53] had already addressed the Due Process issue, at least implicitly. They observe that this Court recognized in *Pyott II* that numerous jurisdictions have held that, "because the real plaintiff in a derivative suit

---

[51] *Id.* at 315. The *Bayer* decision is based "on the Anti-Injunction Act and the principles of issue preclusion that inform it," and, thus, did not consider the plaintiff's "argument, based on *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797 (1985), that the District Court's action violated the Due Process Clause." *Id.* at 308 n.7. The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to *protect or effectuate it judgments*." 28 U.S.C. § 2283 (emphasis added). Thus, this last exception, known as the "relitigation exception," is "designed to implement 'well-recognized concepts' of claim and issue preclusion," and thus authorizes injunctions when necessary "to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" *Bayer*, 564 U.S. at 306 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147-48 (1988)). Given that "a court does not usually get to dictate to other courts the preclusion consequences of its own judgment," the Court has tried to keep its application "strict and narrow" and thus allows injunctions "only if preclusion is clear beyond peradventure." *Id.* at 306-07 (internal quotation marks omitted).

[52] *EZCORP*, 130 A.3d at 948.

[53] 74 A.3d 612 (Del. 2013).

14

is the corporation, 'differing groups of shareholders who can potentially stand in the corporation's stead are in privity for the purposes of issue preclusion.'"[54] Defendants observe that we had more recently affirmed a similar finding of privity in *Asbestos Workers Local 42 Pension Fund v. Bammann*.[55] Further, they argue that Arkansas federal courts have repeatedly "held or presumed that '[c]ollateral estoppel prevents the issue of pre-suit demand futility from being relitigated.'"[56]

Regarding *EZCORP*, Defendants note that, even if its approach were advisable as a matter of Delaware policy, it does not accurately reflect federal law or the law of Arkansas. They elaborate that *EZCORP* turned only on Delaware law (specifically Court of Chancery Rule 15 (aaa)), which allows the Delaware Court of Chancery to dismiss derivative suits as to the named plaintiff only. They point out that the Federal Rules of Civil Procedure (which governed the proceedings in Arkansas federal court) lack a similar provision, as do the procedural rules of Arkansas.

---

[54] *Id.* at 616-17 (quoting *LeBoyer v. Greenspan*, 2007 WL 4287646, at *3 (C.D. Cal. June 13, 2007)).

[55] 132 A.3d 749 (Del. 2016), *aff'g* 2015 WL 2455469 (Del. Ch. May 22, 2015) (applying collateral estoppel under New York law). In *Bammann*, the Court of Chancery cited New York authority for the proposition that, "[a]s to the question of privity, under New York law, '[i]t is well-settled that collateral estoppel may be applied in the shareholder derivative context.'" 2015 WL 2455469, at *16 (quoting *Carroll ex rel. Pfizer, Inc. v. McKinnell*, 2008 WL 731834, at *2 (N.Y. Sup. Ct. Mar. 17, 2008)). The Court of Chancery stated that, "[t]his principle recognizes that 'shareholder plaintiffs are treated like equal and effectively interchangeable members of a class action because their claims belong to and are brought on behalf of the corporation' and that, accordingly, 'a judgment rendered in such an action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders.'" *Id.* (quoting New York authorities).

[56] Defendants' Answering Br. at 2 (quoting *Harben v. Dillard*, 2010 WL 389 3980, at *6 (E.D. Ark. Sept. 30, 2010)).

When first considering this appeal, we believed that there was some "force" to the Delaware Plaintiffs' argument that the Court of Chancery may have "conflated" the privity and Due Process analyses.[57] We appreciate that Arkansas law is unsettled in this derivative context. Moreover, even the United States Supreme Court, in *Taylor v. Sturgell*,[58] cautioned that the term "privity" has been used to cover a range of different relationships and observed, for example, that "privity" has referred to substantive legal relationships justifying preclusion and, alternatively, the term has also been used more broadly "as a way to express the conclusion that nonparty preclusion is appropriate on any ground."[59]

As such, the United States Supreme Court, accordingly, avoided the term "privity"[60] in *Taylor*, an opinion where it identified six recognized situations where nonparty preclusion does not violate the Due Process Clause of the United States Constitution.[61] These six situations are when the party to be precluded: (1) agreed to be precluded by contract;[62] (2) had a pre-existing substantive legal relationship with the prior litigant;[63] (3)

---

[57] *Remand Or.*, 2017 WL 6421389, at *5. We also observed that "[b]oth sides agree that, although they overlap, the privity and Due Process issues are distinct." *Id.*

[58] 553 U.S. 880 (2008).

[59] *Id.* at 894 n.8; *see also Richards*, 517 U.S. at 798 ("[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term.").

[60] 553 U.S. at 894 n.8 (2008) ("To ward off confusion, we avoid using the term 'privity' in this opinion.").

[61] These exceptions generally followed those articulated in the Restatement, including Section 41, in particular. *See id.* at 893 n.6, 894 n.8.

[62] *Id.* at 893.

[63] *Id.* at 894 n.8 (noting that that "substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.'"). The Supreme Court specified that those "substantive legal relationships" that qualify under this exception "include, but are not limited to,

16

was adequately represented by the prior litigant who shared its interests;[64] (4) assumed control over the prior litigation;[65] (5) is attempting to act as a proxy for the prior litigant seeking to relitigate a given issue;[66] or (6) is expressly prohibited by a statutory scheme that complies with Due Process.[67] The United States Supreme Court stated that this is a nonexclusive list and that there may be other exceptions recognized by case law.[68]

In our Remand Order, we suggested that the "most analogous of these exceptions involves putative class actions"[69] (*i.e.*, this third exception)—those "limited circumstances" where a "nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the

---

preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id.* at 894 (citing Restatement §§ 43-44, 52, 55). The Court also observed that such exceptions derive "as much from the needs of property law as from the values of preclusion by judgment." *Id.* (quoting 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4448 (2d ed. 2002) [hereinafter Wright & Miller]).

[64] *Id.* at 894-95 (citing to, among other authorities, Restatement § 41).

[65] *Id.* at 895.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 893 n.6 (noting that these categories could be organized differently and the list was not "a definitive taxonomy").

[69] *Remand Or.*, 2017 WL 6421389, at *6.

17

suit."[70]   Such representative suits include, among others, "properly conducted class actions"[71] and "suits brought by trustees, guardians, and other fiduciaries."[72]

In *Smith v. Bayer*,[73] the United States Supreme Court considered whether putative, uncertified class actions fall within this exception as "properly conducted class action[s]," and it held that they do not.[74]  The Court stated that "a 'properly conducted class action,' with binding effect on nonparties [*i.e.*, consistent with Due Process], can come about in federal courts in just one way—through the procedure set out in Rule 23."[75]  In other words, "[n]either a proposed class action nor a rejected class action may bind nonparties."[76]  Only class actions certified under Rule 23 may bind unnamed members of the certified class actions under this exception to avoid breaching the Due Process rights of subsequent litigants.  We questioned whether the same reasoning should be applied to derivative plaintiffs who fail to plead demand futility, given the similarities between a pre-demand futility derivative action and a pre-certified class action.

---

[70] *Taylor*, 553 U.S. at 894 (quoting *Richards*, 517 U.S. at 798).

[71] *Id.* (citing *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989)); *see also Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

[72] *Taylor*, 553 U.S. at 894 (citing *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 593 (1974); Restatement § 41).

[73] 564 U.S. 299 (2011).

[74] *Id.* 314-15.

[75] *Id.* at 315.

[76] *Id.*; *see also id.* at 313 ("The definition of the term 'party' can on no account be stretched so far as to cover a person . . . whom the plaintiff in a lawsuit was denied leave to represent.").

Accordingly, we posed the following question to the Chancellor:

> In a situation where dismissal by the federal court in Arkansas of a stockholder plaintiff's derivative action for failure to plead demand futility is held by the Delaware Court of Chancery to preclude subsequent stockholders from pursuing derivative litigation, have the subsequent stockholders' Due Process rights been violated? *See Smith v. Bayer Corp.*, 564 U.S. 299 (2011).[77]

We requested a supplemental opinion on this question. In doing so, we underscored the "troubling" nature of this case.[78] On the one hand, this Court has repeatedly admonished plaintiffs to use the "tools at hand" and to request company books and records under Section 220 to attempt to substantiate their allegations before filing derivative complaints.[79] Delaware Plaintiffs heeded this advice and demanded Company books and records under Section 220. In contrast, the Arkansas Plaintiffs did not seek books and records, and their complaint was dismissed with prejudice.

On the other hand, we have acknowledged the importance of the Full Faith and Credit Clause of the U.S. Constitution,[80] which implicates principles of comity and respect

---

[77] *Remand Or.*, 2017 WL 6421389, at *8.

[78] *Id.* at *1.

[79] *Id.*; *see also Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 120 (Del. 2006) (describing "this Court's encouragement of stockholders, who can show a proper purpose, to use the 'tools at hand' to obtain the necessary information before filing a derivative action."); *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1145 (Del. 2011) ("Delaware courts have strongly encouraged stockholder-plaintiffs to utilize Section 220 before filing a derivative action, in order to satisfy the heightened demand futility pleading requirements of Court of Chancery Rule 23.1.").

[80] *See Remand Or.*, 2017 WL 6421389, at *7 n.47; *see also Pyott II*, 74 A.3d at 616 ("The United States Supreme Court has held that the full faith and credit obligation is 'exacting' and that there is 'no roving 'public policy exception' to the full faith and credit due judgments.'" (quoting *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232-33 (1998))).

for the judgments of other courts. We have observed that, although Delaware has an "undisputed interest" in "governing the internal affairs of its corporations," that interest "must yield to the stronger national interests that all state and federal courts have in respecting each other's judgments."[81] The importance of these intertwined issues and their policy implications deserved closer examination and the benefits of additional briefing if the Chancellor desired.

After requesting and receiving additional briefing from the parties, the Chancellor provided his thoughts in his Supplemental Opinion. He found that the weight of authority suggests that, no, the Court of Chancery does not violate the Due Process rights of later derivative plaintiffs if it concludes that a federal court's dismissal of a prior plaintiff's derivative action for failure to plead demand futility precludes subsequent stockholders from pursuing derivative litigation relating to the same issues—unless the prior representation was inadequate, *i.e.*, "unless the representative plaintiff's management of the first derivative action was 'so grossly deficient as to be apparent to the opposing party' or failed to satisfy one of the Restatement's other criteria for determining adequacy of representation."[82]

Nonetheless, the Chancellor recommended that this Court depart from the weight of authority and adopt the rule proposed in *EZCORP*.[83] Although the Chancellor

---

[81] *Pyott II*, 74 A.3d at 616.

[82] *Supp. Op.*, 167 A.3d at 515 (citing Restatement § 42 cmt. f).

[83] *See id.* at 525 ("I respectfully suggest that the Supreme Court should consider a different approach and adopt the one suggested in *EZCORP*.").

acknowledged that "no court has done so to date, and although the [Delaware] Supreme Court previously declined to embrace such a rule in the context of considering the question of privity in derivative litigation,"[84] the Chancellor suggested that such a rule would "better safeguard the due process rights of stockholder plaintiffs and should go a long way to addressing fast-filer problems currently inherent in multi-forum derivative litigation."[85]

## II.

We appreciate the Chancellor's thoughtful deliberations on this difficult matter. But we decline to embrace his suggestion that the *EZCORP* approach become the law governing the preclusive effect of prior determinations of demand futility, especially given that federal law governs our evaluation of Due Process concerns. Three federal circuit courts have already addressed whether granting preclusive effect to prior determinations of demand futility violates Due Process, and they each arrived at the same conclusion: the Due Process rights of subsequent derivative plaintiffs are protected, and dismissal based on issue preclusion is appropriate, when their interests were aligned with and were adequately represented by the prior plaintiffs.[86] Most other cases on this issue have granted

---

[84] *Id.* at 516 (citing *Pyott II*, 74 A.3d at 616-18).

[85] *Id.*

[86] *See Arduini v. Hart*, 774 F.3d 622, 633-34 (9th Cir. 2014) (applying Nevada law); *In re Sonus Networks, Inc. S'holder Deriv. Litig.*, 499 F.3d 47, 64 (1st Cir. 2007) (applying Massachusetts law); *Nathan v. Rowan*, 651 F.2d 1223, 1226-28 (6th Cir. 1981) (applying federal common law).

21

preclusive effect to a prior court's decision on demand futility, though many of these opinions do not expressly address Due Process.[87]

---

[87] Defendants suggest that "a solid wall of federal and state decisions from across the country" address the Due Process concerns here. *See* Oral Argument, *supra* note 29, at 20:12; *id.* at 20:44 (referring to cases listed in Defendants' Supp. Mem. at 1, n.1). While these cases support giving preclusive effect to prior determinations of demand futility, close examination reveals that most of the cited cases do not expressly address the Due Process rights of the subsequent derivative plaintiffs. Some allow preclusion after finding adequate representation (which, we acknowledge, is part of the Due Process analysis). *See Hanson v. Odyssey Healthcare, Inc.*, 2007 WL 5186795, at *6 (N.D. Tex. Sept. 21, 2007); *In re Bed Bath & Beyond Inc. Deriv. Litig.*, 2007 WL 4165389, at *7-8 (D. N.J. Nov. 19, 2007); *Henik v. LaBranche*, 433 F. Supp. 2d 372, 381-82 (S.D.N.Y. 2006); *Laborers' Dist. Council Constr. Indus. Pension Fund v. Bensoussan*, 2016 WL 3407708, *10-13 (Del. Ch. June 14, 2016), *aff'd*, 155, A.3d 1283 (Del. 2017); *In re Career Educ. Corp. Deriv. Litig.*, 2007 WL 2875203, at *10 (Del. Ch. Sept. 28, 2007); *see also Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 269 (3d Cir. 1978) ("Nonparty shareholders are usually bound by a judgment in a derivative suit on the theory that the named plaintiff represented their interests in the case. But that rationale is valid only if the representation of the shareholders' interests was adequate."); *In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d 920, 938-39 (E.D. Cal. 2017). Others do not address the adequacy of the prior representation, yet apply issue preclusion in this context after finding other elements satisfied. *See In re MGM Mirage Deriv. Litig.*, 2014 WL 2960449, at *7 (D. Nev. June 30, 2014); *Harben v. Dillard*, 2010 WL 389 3980, at *6 (E.D. Ark. Sept. 30, 2010); *LeBoyer v. Greenspan*, 2007 WL 4287646 (C.D. Cal. June 13, 2007); *Asbestos Workers Local 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *16 n.135 (Del. Ch. May 22, 2015) (noting that the plaintiff "has not argued an absence of an opportunity to fully and fairly litigate this issue" or that the prior derivative plaintiffs were inadequate representatives), *aff'd*, 132 A.3d 749 (Del. 2016); *City of Providence v. Dimon*, 2015 WL 4594150, at *7 (Del. Ch. July 29, 2015) (applying res judicata) ("Under New York law, a later stockholder asserting derivative claims on behalf of a corporation is considered to be the 'same plaintiff' as a different stockholder asserting those claims on behalf of the corporation in a separate action."), *aff'd*, 134 A.3d 758 (Del. 2016); *see also Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386 (5th Cir. 2005); *Dana v. Morgan*, 232 F. 85, 90-91 (2d Cir. 1916); *Liken v. Shaffer*, 64 F. Supp. 432, 443-44 (N.D. Iowa 1946). We observe that, in *Pyott II*, we cited in a footnote as dicta Justice Ginsburg's concurring and partially dissenting opinion in *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, as noting the general point that "final judgments can be attacked collaterally on due process grounds for failure to satisfy the adequate representation requirement." 74 A.3d at 618 n.21 (citing 516 U.S. 367, 395-96 (1996) (Ginsburg, J., concurring in part and dissenting in part)). However, we did not reach the Due Process implications of preclusion as the plaintiffs-appellees in *Pyott II* had advised this Court that the Due Process question had not been fully briefed before the Court of Chancery and was not being argued on appeal. *See Remand Or.*, 2017 WL 6421389, at *6-7 (citing *Pyott II*, 74 A.3d at 616-18).

## A. The Governing Law

As we observed above, "[t]he preclusive effect of a federal-court judgment is determined by federal common law."[88] Though, by its terms, the Full Faith and Credit Clause of the United States Constitution does not explicitly apply to judgments of federal courts,[89] the United States Supreme Court "has held that a state court is required to give a federal judgment the same force and effect as it would be given under the preclusion rules of the state in which the federal court is sitting."[90]

All parties and the Court of Chancery agreed that, under federal common law, a federal court sitting in diversity jurisdiction will apply the preclusion law of the state in which it sits. The Court of Chancery reasoned that the "issue requiring preclusion analysis here is the Arkansas district court's decision concerning demand futility relating to the Arkansas plaintiffs' fiduciary duty claim, which was brought under the district court's diversity jurisdiction."[91] Though that is true, we observe that the Arkansas Complaint also

---

[88] *Taylor*, 553 U.S. at 891.

[89] U.S. Const., art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").

[90] *Pyott II*, 74 A3d at 616 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501 (2001)).

[91] *Orig. Op.*, 2016 WL 2908344, at *8. The Chancellor observed that the fiduciary duty claim at issue here was brought under the district court's diversity jurisdiction, as well as the court's supplemental jurisdiction, but that no party had argued that the analysis would differ. *See id.* at *8 n.33. He followed the approach of *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, 2016 WL 236249, at *3 n.4 (S.D.N.Y. Jan. 20, 2016), which applied "federal rules of preclusion to judgments on claims premised on federal question jurisdiction, and New York [*i.e.*, state law] rules of preclusion to judgments on claims premised upon diversity or supplemental jurisdiction." *See Orig. Op.*, 2016 WL 2908344, at *8 n.33.

asserted federal question and supplemental jurisdiction given the presence of the federal securities law claims. Thus, it is arguable that the federal common law of issue preclusion applies.[92] However, we believe the result would be the same under both federal and Arkansas law. As discussed below, Arkansas law draws on federal law (as well as the Restatement), and the United States Supreme Court recently reiterated that the federal courts also look to the Restatement (Second) of Judgments for "the ordinary elements of issue preclusion."[93]

---

[92] *See, e.g.*, *Taylor*, 553 U.S. at 891 ("For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res judicata, which this Court has ultimate authority to determine and declare." (quoting *Semtek*, 531 U.S. at 508)); Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1368 (7th ed. 2015) ("When a federal court decides a federal question, federal preclusion rules govern the preclusive effect of the judgment in subsequent state or federal court proceedings."); *see also, e.g.*, *Cooper v. Glasser*, 419 S.W.3d 924, 929 (Tenn. 2013) (observing that "*Semtek* clearly establishes three points: (1) state claim-preclusion law controls the preclusive effect of a federal dismissal in a diversity case unless state law sufficiently undermines federal interests; (2) any resolution of the substance/procedure concerns raised in these cases necessarily implicates *Erie* and the Rules Enabling Act; and (3) state courts must give judgments in federal-question cases the claim-preclusive effect that federal law commands," and that "*Semtek* does not, however, state whether federal or state claim-preclusion law governs supplemental state-law claims filed in federal court.") In *Cooper*, the Tennessee Supreme Court applied state claim-preclusion law in analyzing the preclusive effect of voluntary dismissals of supplemental state law claims filed in federal court. *Id.* at 930; *see also Sprint Commc'n Co. v. Crow Creek Sioux Tribal Ct.*, 121 F. Supp. 3d 905, 925, n.19 (D. S.D. 2015) (noting that, "[t]he parties have not addressed whether state or federal doctrine should be followed in cases where both diversity and federal question jurisdiction are invoked," but that "South Dakota's doctrine of issue preclusion draws on federal law and does not differ greatly from the test articulated by the Eighth Circuit."). *But see JPMorgan*, 263 F. Supp. at 930-31(concluding that "federal common law determines Steinberg's preclusive effect because Steinberg addressed a federal question," and stating, "that Steinberg also involved state law claims does not change this Court's conclusion because the Steinberg court considered those claims on the basis of supplemental jurisdiction only").

[93] *See, e.g.*, *B&B Hardware, Inc. v. Hargis Indus., Inc.* 135 S. Ct. 1293, 1303 (2015).

All parties also agree that examining privity does not end our inquiry. The United States Supreme Court has stated that "[t]he federal common law of preclusion is, of course, subject to due process limitations."[94] Regarding issues of Due Process, federal law governs our analysis.[95]

As such, for issue preclusion to apply, the party asserting issue preclusion must satisfy the court that, first, all elements of issue preclusion are present and, second, Due Process requirements are satisfied.[96] We address these requirements in turn.

### B.    Issue Preclusion

"Collateral estoppel, or issue preclusion, bars relitigation of issues, law, or fact actually litigated in the first suit."[97] The Chancellor noted that collateral estoppel requires the "following four elements": "1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) that issue must have been actually litigated; 3) the

---

[94] *Taylor*, 553 U.S. at 891 (citing *Richards*, 517 U.S. 793, 797 (1996)).

[95] *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982) ("[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law."); *id.* at 482 ("The State must, however, satisfy the applicable requirements of the Due Process Clause. A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."); *see also Richards*, 517 U.S. at 805 (reversing Alabama state court's application of res judicata as invalid "as a matter of federal due process").

[96] *See Taylor*, 553 U.S. at 907 ("[A] party asserting preclusion must carry the burden of establishing all necessary elements." (quoting 18 Wright & Miller, *supra* note 63, § 4405) (alteration in original)).

[97] *Riverdale Dev. Co. v. Ruffin Bldg. Systems, Inc.*, 146 S.W.3d 852, 855 (Ark. 2004). "[I]ssue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Taylor*, 533 U.S. at 892 n.5.

issue must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment."[98]  Though many Arkansas cases indicate that there are "four elements" of issue preclusion,[99] the Court of Chancery adopted the view of the parties and suggested that issue preclusion under Arkansas law requires another two

---

[98] *Riverdale*, 146 S.W.3d at 855.  In *B&B Hardware*, the United States Supreme Court noted that, "[t]he Court . . . regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion."  135 S. Ct. at 1303.  It also stated that, "[t]he Restatement explains that subject to certain well-known exceptions, the general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  *Id.* (quoting Restatement § 27; citing Restatement § 28 as providing exceptions).  Arkansas courts also look to the Restatement, including § 27.  *See, e.g.*, *Estate of Goston v. Ford Motor Co.*, 898 S.W.2d 471, 473 (Ark. 1995).  The facts that both federal common law and Arkansas law look to the Restatement, and that Arkansas law looks to federal jurisdictions, support our conclusion that the result is the same under both federal common law and Arkansas law.  *See also Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)):

> In the Eighth Circuit, issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

[99] *See, e.g.*, *Riverdale*, 146 S.W.3d at 855 ("four elements"); *Mann v. Pierce*, 505 S.W.3d 150, 154 (Ark. 2016) ("four requirements"); *Fisher v. Jones*, 844 S.W.2d 954, 957 (Ark. 1993) ("four elements"); *Abraham v. Beck*, 456 S.W.3d 744, 752 (Ark. 2015) (listing four "elements" of collateral estoppel); *Morgan v. Turner*, 368 S.W.3d 888, 895 (Ark. 2010) (same).  *But see Crockett v. C.A.G. Investments, Inc.*, 381 S.W.3d 793, 799 (Ark. 2011) ("Under issue preclusion (collateral estoppel), a decision by a court of competent jurisdiction on matters which were at issue, and which were directly and necessarily adjudicated, bars any further litigation on those issues by the plaintiff or his privies against the defendant or his privies on the same issue."); *Dearman*, 842 S.W.2d at 452 (citing 18 Wright & Miller, *supra* note 63, § 4448, for the view that the "doctrine [of collateral estoppel] applies only to persons who were parties or who are in privity with persons who were parties in the first action").

elements: (i) privity; and (ii) adequacy of the prior representation. We thus assume that

these elements are also required for issue preclusion to be applied.[100]

The Arkansas Supreme Court in *Crockett v. C.A.G. Investments, Inc.*[101] said that

privity "exists when two parties are so identified with one another that they represent the

same legal right."[102] Here, the parties have sparred over whether the requisite showing of

privity is satisfied by demonstrating that privity exists among competing sets of derivative

plaintiffs, or that privity exists between the corporation and its stockholders acting as

derivative plaintiffs. The Arkansas Supreme Court has not yet addressed "privity" in this

context. Thus, confronting this unsettled question of issue preclusion law, the parties

agreed, as did the Chancellor, that the Arkansas courts would look to the Restatement

---

[100] The one case applying Arkansas law that considers defendants' assertion of issue preclusion against a second derivative plaintiff's attempt to litigate demand futility, *Harben v. Dillard*, 2010 WL 3893980 (E.D. Ark. Sept. 30, 2010), does not include privity as an element for the applicability of issue preclusion. *See id.* at *3. The Chancellor mentioned the case, but did not consider it helpful because "the parties did not raise and the court did not explicitly address the question of privity." *Orig. Op.*, 2016 WL 2908344, at *12 n.64 (citing *Harben*, 2010 WL 3893980, at *1).

[101] 381 S.W.3d 793 (Ark. 2011).

[102] *Id.* at 799; *see also Dearman*, 842 S.W.2d at 452 ("The Arkansas Supreme Court has said that privity within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right." (citing *Spears v. State Farm Fire & Cas. Ins.*, 725 S.W.2d 835 (Ark. 1987))).

(Second) of Judgments (the "Restatement") for guidance.[103] Arkansas courts also look to other jurisdictions[104] and consider policy implications.[105]

The Restatement does not use the term "privity." Yet the parties and the Chancellor focused on Section 41, which explains that a nonparty "who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party."[106] Section 41 then lists five situations where a nonparty is said to have been represented by a prior party,[107] thereby allowing preclusion of a nonparty provided certain preconditions are met.[108] One such situation is Section 41(1)(e), where the prior party was a "representative

---

[103] *See Orig. Op.*, 2016 WL 2908344, at *13-16; *Supp. Op.*, 167 A.3d at 518-19; Delaware Plaintiffs' Opening Br. at 18; Defendants' Answering Br. at 11; Delaware Plaintiffs' Reply Br. at 2; Defendants' Supp. Mem. at 10.

[104] *See Orig. Op.*, 2016 WL 2908344, at *13 n.66 (citing *Dearman*, 842 S.W.2d at 452 (citing Third Circuit, Colorado, New York, and New Jersey opinions in discussing privity)).

[105] *See id.* (citing *Beaver v. John Q. Hammons Hotels, L.P.*, 138 S.W.3d 664, 670 (Ark. 2003)); *see also Crockett*, 381 S.W.3d at 799 ("The true reason for holding an issue to be barred is not necessarily the identity or privity of the parties, but instead to put an end to litigation by preventing a party who has had one fair trial on a matter from relitigating the matter a second time.").

[106] Restatement § 41(1). The Chancellor also referenced Restatement § 59 cmt. c, which states, in relevant part:

> The stockholder's or member's derivative action is usually though not invariably in the form of a suit by some of the stockholders or members as representatives of all of them. Whether the judgment in such a representative suit is binding upon all stockholders or members is determined by the rules stated in §§ 41 and 42. If it is binding under those rules, it precludes a subsequent derivative action by stockholders or members who were not individually parties to the original action.

Restatement § 59 cmt. c, *quoted in Orig. Op.*, 2016 WL 2908344, at *15.

[107] Restatement § 41(1)(a)-(e).

[108] *See* Restatement § 41 ("Exceptions to this general rule are stated in § 42"); Restatement § 42 (outlining situations where "[a] person is *not* bound by a judgment for or against a party who purports to represent him" (emphasis added)).

28

of a class of persons similarly situated, *designated as such with the approval of the court*, of which the [nonparty] is a member."[109]

As to the possibility of privity among successive sets of derivative plaintiffs, the Delaware Plaintiffs argue that a subsequent derivative plaintiff lacks privity with an earlier derivative plaintiff who did not survive a motion to dismiss because that earlier derivative plaintiff was not "designated" as a representative by the court, as under the Restatement Section 41(1)(e) scenario.[110] Delaware Plaintiffs posit that, just as in class actions, where such judicial designation (or "judicial authority") is conferred through the class certification procedures of Federal Rule of Civil Procedure 23, the "right of stockholders to try to sue derivatively cannot be extinguished by a foreign judgment if no representative authority was conferred."[111] Delaware Plaintiffs argue that such representative authority is conferred only *after* the derivative complaint survives a motion to dismiss for failure to plead demand futility: "a stockholder's *right* to seek leave to compel assertion of the corporate claim is an individual one . . . and the plaintiff does not represent any person until

---

[109] Restatement § 41(1)(e) (emphasis added).

[110] *See* Delaware Plaintiffs' Opening Br. at 19 (citing Restatement § 41(1)(e)); Delaware Plaintiffs' Reply Br. at 3 (same). Delaware Plaintiffs had argued before the trial court that preclusion could not apply as a matter of federal common law because there is no substantive legal relationship between the Arkansas Plaintiffs and the Delaware Plaintiffs. But the Chancellor rejected that argument in a footnote because he found that "the relevant substantive legal relationship is between Wal-Mart and the Arkansas plaintiffs, not between plaintiffs and the Arkansas plaintiffs." *Orig. Op.*, 2016 WL 2908344, at *23 n.124.

[111] Delaware Plaintiffs' Response to Amici Curiae Briefs at 6.

obtaining that leave,"[112] *i.e.*, by a court's finding that the plaintiff's complaint has survived a motion to dismiss.

Regarding the possibility of privity between the Delaware Plaintiffs and Wal-Mart, which *was a party* to the prior litigation, Delaware Plaintiffs argue that they lacked such privity because they "were unrepresented" by Wal-Mart in the prior litigation and "Wal-Mart was named merely as a nominal defendant, with *adverse* interests [to Delaware Plaintiffs]—not the identity of interests that is the hallmark of privity."[113]

Defendants counter by pointing to "the prevailing rule" that "stockholder-plaintiffs are in privity on the issue of demand futility because they 'are acting on behalf of the corporation . . . and the underlying issue of demand futility is the same regardless of which shareholder brings suit.'"[114] And they argue that, given that no Arkansas authorities conflict with this approach, the Chancellor was right when concluding in his Original Opinion that "the Arkansas Supreme Court would follow the majority rule that privity attaches to subsequent derivative stockholders."[115]

We see the privity analysis as follows: Privity under Arkansas law "exists when two parties are so identified with one another that they represent the same legal right."[116] Arkansas' approach appears to be a flexible and practical inquiry that eschews strict

---

[112] *Id.* at 5-6.

[113] *Id.* at 5.

[114] Defendants' Answering Br. at 7 (quoting *Arduini*, 774 F.3d at 634).

[115] *Id.* at 9 (quoting *Orig. Op.*, 2016 WL 2908344, at *14).

[116] *Crockett*, 381 S.W.3d at 799.

reliance on formal categories of representative relationships and focuses on "the reasons for holding a person bound by a judgment," including fairness concerns.[117] Similarly, while the United States Supreme Court has abandoned the term "privity,"[118] federal courts applying federal common law, like courts in Arkansas, have focused on whether the person arguably precluded is so identified in interest with the former litigant that she represents the same legal right.[119] Viewing derivative litigation in stages, and analyzing what is happening at each stage, helps to explain why privity exists here.[120]

---

[117] *Dearman*, 842 S.W.2d at 452. In *Dearman*, an en banc Arkansas Court of Appeals (intermediate appellate court), included privity among the prerequisites for collateral estoppel and noted that the latest decisions discussing privity "look directly to the reasons for holding a person bound by a judgment," such as fairness concerns, and recommend that "the label is either discarded entirely or retained as no more than a convenient means of expressing conclusions that are supported by independent analysis." 842 S.W.2d at 452 (quoting 18 Wright & Miller, *supra* note 63, § 4448). The court also explained that "persons in a privity relationship are deemed to have interests so closely intertwined that a decision involving one should control the other." *Id.*

[118] *See supra* notes 58-59 and accompanying text.

[119] *See Cooper v. Harris*, 137 S. Ct. 1455, 1467 (2017) ("[W]hen plaintiffs in two cases have a special relationship, a judgment against one can indeed bind both." (citing *Taylor*, 553 U.S. at 893-95)); *Entek GRB, LLC v. Stull Ranches, LLC*, 763 F.3d 1252, 1258 (10th Cir. 2014) (Gorsuch, J.) ("Of course, privity is but a label. But it is a label that seeks to convey the existence of a relationship sufficient to give courts confidence that the party in the former litigation was an effective representative of the current party's interests." (citing *Taylor*, 553 U.S. at 894 n.8); *id.* at 1258-59 ("Privity is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." (quoting *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-53 (9th. Cir. 2005))).

[120] An intermediate appellate court in New York expressed a flexible approach similar to that of Arkansas' en banc intermediate appellate court in *Dearman*. *See supra* note 117. The New York court, in declining to require that a party to be precluded fits in the precise categories of Section 41, stated:

> We think the better rule, however, and that which is actually applied in this State as well as in a number of other jurisdictions, eschews strict reliance on formal representative relationships in favor of a more flexible consideration of whether all of the facts and circumstances of the party's and nonparty's actual relationship,

At the first stage of a derivative action (assertion of demand futility), the stockholder-derivative plaintiff is permitted to litigate only the board's capacity to control the corporation's claims. The corporation is always the sole owner of the claims.[121] In other words, the suit is always about the corporation's right to seek redress for alleged harm to the corporation. As the Arkansas Supreme Court has stated, "inherent in the nature of the [derivative] suit itself [is] that it is the corporation whose rights are being redressed rather than those of the individual plaintiff."[122]

The demand requirement (contained in Federal Rule of Civil Procedure 23.1)[123] reflects the requirement that a corporation's important business decisions should be made by its board of directors.[124] Such decisions include the decision to sue a corporation's

---

their mutuality of interests and the manner in which the nonparty's interests were represented in the prior litigation establishes a functional representation such that the nonparty may be thought to have had a vicarious day in court.

*Slocum ex rel. Nathan A v. Joseph B*, 588 N.Y.S.2d 930, 931 (App. Div. 1992).

[121] *E.g.*, *City of Birmingham Ret. & Relief Sys. v. Good*, --- A.3d ----, 2017 WL 6397490, at *4 (Del. Dec. 15, 2017) (describing a derivative claim as "a claim belonging to the corporation").

[122] *Brandon v. Brandon Constr. Co.*, 776 S.W.2d 349, 352 (Ark. 1989).

[123] Fed. R. Civ. P. 23.1(b) ("The complaint must . . . (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."); *see also* Del. Ct. Ch. R. 23.1 ("The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort.").

[124] *See, e.g.*, *Spiegel*, 571 A.2d at 773 ("The decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation. Consequently, such decisions are part of the responsibility of the board of directors.") (citation omitted).

directors on behalf of the corporation.[125]  At the start of the derivative suit, the stockholder-derivative plaintiff only has standing, as a matter of equity, to set in motion the judicial machinery on the corporation's behalf.[126]  The stockholder-derivative plaintiff may assume control of the corporation's claim only if he demonstrates that demand on the board would be futile.  But, through the entire process, the corporation alone is the real party in interest because the suit is always on its behalf.

The "dual" nature of the derivative action does not transform a stockholder's standing to sue on behalf of the corporation into an individual claim belonging to the stockholder.  The named plaintiff, at this stage, only has standing to seek to bring an action by and in the right *of the corporation* and never has an individual cause of action.  This highlights a fundamental distinction from class actions, where the named plaintiff initially asserts an individual claim and only acts in a representative capacity after the court certifies that the requirements for class certification are met.[127]

However, when multiple derivative actions are filed (in one or more jurisdictions), the plaintiffs share an identity of interest in seeking to prosecute claims by and in the right

---

[125] 8 *Del. C.* § 141(a) ("The business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors . . . .").

[126] *See, e.g., Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008); *accord Dana*, 232 F. at 90.  In *Schoon*, we observed that, "[t]he stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his* . . . ."  953 A.2d at 202 (quoting 4 *Pomeroy's Equity Jurisprudence* § 1095 (5th ed.1941)).  Rather, "he is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court*," and the "corporation alone has a direct interest" in the litigation.  *Id*. (quoting same).

[127] *Cf. Bayer*, 564 U.S. at 314-15 (rejecting argument that the party who sought class certification's "interests were aligned with the members of the class he proposed and he 'act[ed] in a representative capacity when he sought class certification.'" (quoting Brief for Respondent Bayer)).

of the same real party in interest—*i.e.*, as representatives of—the corporation.  Here, the Delaware and Arkansas Plaintiffs sought to enforce the same legal rights by stepping into Wal-Mart's shoes to assert the corporation's claims related to the same alleged misconduct and investigation.  Though not a formal "representative" of other stockholders at this stage because the real party in interest is the corporation, differing groups of stockholders who seek to control the corporation's cause of action share the same interest and therefore are in privity.

Even before *Crockett*, in *Arkansas Department of Human Services v. Dearman*,[128] the Arkansas Court of Appeals said in a compellingly straightforward fashion that privity "means a person so identified in interest with another that he represents the same legal right," also titled an "identity of interest."[129]  There, the court found privity between a mother and the state's Department of Human Services ("DHS") as they shared an "identity of interest":  both the mother and DHS sought "to prove allegations of sexual abuse against the father of the children, to remove them from his custody, and to protect the best interests of the children."[130]  Further, the subsequent litigant, DHS, had "notice of the earlier action and the opportunity to participate."[131]  Thus, the *Dearman* court found privity where a subsequent litigant with notice of the first action sought to relitigate the same issue on behalf of the same real party in interest, the children.  The Arkansas Supreme Court applied

---

[128] 842 S.W.2d 449 (Ark. Ct. App. 1992) (en banc).

[129] *Id.* at 452.

[130] *Id.*

[131] *Id.* at 452-53.

34

the *Dearman* test in *Crockett*.[132] Although the Arkansas Supreme Court has not addressed

the application of collateral estoppel in the derivative context, we think that application of

Arkansas' flexible approach set forth in *Crockett* and *Dearman* suggests that there is privity

here as a matter of Arkansas law. This is so given the identity of interest derivative

plaintiffs share in having a stockholder control the corporation's claim instead of the

directors, and given that the real party in interest, the corporation, was a party to the

litigation.[133]

A review of federal common law reinforces this view. The five federal circuit courts

that have considered whether privity exists between sets of successive derivative plaintiffs

have all found the requisite privity under the applicable law, whether state law or federal

common law.[134] In *Sonus*, the First Circuit found privity between two successive derivative

---

[132] *See Crockett*, 381 S.W.3d at 799 (noting that privity "exists when two parties are so identified with one another that they represent the same legal right.").

[133] We agree with the Chancellor that the Restatement "does not meaningfully analyze whether the corporation's status as the real party in interest makes privity a foregone conclusion for subsequent representative stockholders." *Orig. Op.*, 2016 WL 2908344, at *16. But, as this Court observed in *Pyott II*, "[b]ecause the real plaintiff in a derivative suit is the corporation, 'differing groups of shareholders who can potentially stand in a corporation's stead are in privity for the purposes of issue preclusion.'" *Pyott II*, 74 A.3d at 617 (applying California law) (quoting *LeBoyer v. Greenspan*, 2007 WL 4287646, at *3 (C.D. Cal. June 13, 2007)); *see also, e.g.*, *Parkoff v. Gen. Tel. & Elecs. Corp.*, 425 N.E.2d 820, 824 (N.Y. 1981) ("Because the claim asserted in a stockholder's derivative action is a claim belonging to and on behalf of the corporation, a judgment rendered in such an action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders.").

[134] *Arduini*, 774 F.3d at 634 (applying Nevada law); *Sonus*, 499 F.3d at 57 (applying Massachusetts law); *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386 (5th Cir. 2005) (citing Fifth Circuit case applying Texas law); *Nathan*, 651 F.2d at 1226 (applying federal common law); *Dana*, 232 F. at 90 (not specifying the applicable law). Further, the Third Circuit reached the same result, even though it did not use the term privity. *See Cramer*, 582 F.2d at 269.

plaintiffs suing on behalf of the same corporation because "[u]nder Massachusetts law, a derivative suit is prosecuted 'in the right of a corporation,'"[135] and "the plaintiff in a derivative suit represents the corporation, which is the real party in interest."[136] In other words, privity existed because both derivative plaintiffs sought to represent the same legal right—that of the corporation, which was the real party in interest. In *Arduini*, the Ninth Circuit relied on *Sonus* to find the same.[137]

In *Dana v. Morgan*, a century-old Second Circuit case, the second derivative plaintiff argued that "the judgment of the New York court [*i.e.*, the first court] does not affect him, as he was not a party to it, a privy to it, or represented in it."[138] However, the court determined, "[t]he answer is that the corporation whose interest he seeks to represent in this suit was a party to that [prior New York] action and is concluded by it and that that concludes him."[139] After all, "there can be but one adjudication in the rights of the corporation."[140] In *Nathan v. Rowan*, the Sixth Circuit cited *Dana* in holding that, "[i]n

---

[135] *Sonus*, 499 F.3d at 64 (quoting Mass. Gen. Laws Ann. ch 156D, § 7.40).

[136] *Id.* at 63.

[137] *Arduini*, 774 F.3d at 634 (quoting *Sonus*, 499 F.3d at 64, as explaining that "'the prevailing rule [is] that the shareholder in a derivative suit represents the corporation,'" and concluding that "[s]uch reasoning applies equally to Nevada derivative suits, where the shareholders are acting on behalf of the corporation and its shareholders and the underlying issue of demand futility is the same regardless of which shareholder brings suit."). *See also Goldman v. Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979) ("The parties [in subsequent derivative suits] are the same, although represented by different shareholders. Neither Springer nor Goldman sought to obtain personal judgments. The corporation was the sole real party in interest in both cases.").

[138] 232 F. at 91.

[139] *Id.*

[140] *Id.* at 89.

shareholder derivative actions arising under Fed. R. Civ. P. 23.1, parties and their privies include the corporation and all nonparty shareholders."[141]    And, in *Smith v. Waste Management*, the Fifth Circuit found privity, but did not explain why.[142]   Thus, we are satisfied that privity exists here and that the requirements of issue preclusion are met.[143]

We address the last purported element, the adequacy of representation requirement, as part of the federal Due Process overlay.  As the Chancellor acknowledged, "[his] consideration of due process in *Wal-Mart I* [the Original Opinion] was embedded in the determination of adequacy of representation."[144]

C.    *The Federal Due Process Requirement*

As mentioned, "[t]he federal common law of preclusion is subject to due process limitations."[145]   Such limitations derive from the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property without due process of law . . . ."[146]  "The opportunity to be heard is an essential

---

[141] 651 F.2d at 1226.

[142] *See* 407 F.3d at 386.

[143] We are satisfied with the Chancellor's conclusion in his Original Opinion that the four primary elements of issue preclusion under Arkansas law are also satisfied.  We believe the result is the same under federal common law.

[144] *Supp. Op.*, 167 A.3d at 515.

[145] *Taylor*, 553 U.S. at 892; *Kremer*, 456 U.S. at 482 ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment.").

[146] U.S. Const. amend. XIV.

requisite of due process of law in judicial proceedings."[147] Non-party issue preclusion, by its nature—*i.e.*, depriving a party of the ability to litigate an issue—conflicts with the "historic tradition," rooted in Due Process, "that everyone should have his own day in court."[148] Therefore, as a general rule, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."[149] But this general "rule against nonparty preclusion" is subject to several exceptions, such as those outlined in *Taylor*—exceptions where the application of nonparty issue preclusion is said to comply with the requirements of Due Process.[150]

One of these exceptions—the so-called "third exception"—covers "certain limited circumstances" where "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit."[151] Thus, this exception has two prongs: (a) same interests, and (b) adequate representation of those interests.

---

[147] *Richards*, 517 U.S. at 797 n.4. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), suggests that, where a subsequent litigant is in privity with a prior party, he can be said to have had an opportunity to be heard. *See id.* at 327 n.7 ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

[148] *Richards*, 517 U.S. at 798 (quoting 18 Wright & Miller, *supra* note 63, § 4449); *see also id.* at 797 n.4 (noting that the state "cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." (quoting *Postal Tel. Cable Co. v. City of Newport*, 247 U.S. 464, 476 (1918))).

[149] *Taylor*, 553 U.S. at 893 (quoting *Hansberry*, 311 U.S. at 40); *see also Wilks*, 490 U.S. at 762 ("A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.").

[150] *See Taylor*, 553 U.S. at 893-95; *see also supra* notes 60-68 and accompanying text.

[151] *Taylor*, 553 U.S. at 894 (quoting *Richards*, 517 U.S. at 798).

The privity analysis discussed above underscores the commonality and alignment of interests among successive sets of derivative plaintiffs. As explained above, we are satisfied that there is sufficient alignment of interest under both Arkansas and federal common law. Therefore, with this commonality-of-interest safeguard satisfied, the evaluation of the adequacy of the prior representation becomes the primary protection for the Due Process rights of subsequent derivative plaintiffs.[152]

The United States Supreme Court in *Taylor* articulated three "minimum" requirements for showing that "[a] party's representation of a nonparty is 'adequate' for preclusion purposes."[153] First, the interest of the nonparty and her representative must be aligned.[154] Second, "either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty."[155] And third, "sometimes" notice is required.[156]

---

[152] *See Sonus*, 499 F.3d at 65 ("Precluding the suit of a litigant who has not been adequately represented in the earlier suit would raise serious due process concerns.") (focusing Due Process analysis on adequacy of representation after finding privity); *Arduini*, 774 F.3d at 635 (same); *Nathan*, 651 F.2d at 1226 ("Though Nathan was not a party to the Singer action, nonparty shareholders are bound by judgments [in derivative actions] if their interests were adequately represented."); *id.* at 1227 (noting that "[i]t is well settled that the constitutional requirements of due process and full faith and credit mandate that absent class members are not bound by a judgment in a class action unless the class representative provided adequate and fair representation" and applying this principle in the derivative context). In *Sonus*, the First Circuit noted that "[t]he adequacy of representation has been a subject of great concern in derivative suits because of the possibilities for collusion between the nominal plaintiff and the defendants." 499 F.3d at 64.

[153] 553 U.S. at 899.

[154] *Id.* at 900.

[155] *Id.*

[156] *Id.*

Here, as mentioned, the privity analysis reinforces and satisfies the alignment-of-interests requirement.

Second, as to whether the derivative plaintiffs here understood that they were acting in a representative capacity although not yet authorized to control the corporate cause of action, the record makes clear that both sets of plaintiffs understood that a judgment in their case could impact the other stockholders.[157] The Arkansas Plaintiffs had been warned by the federal court of the likelihood that the court's decision would have preclusive effect.[158] And, as noted, the Delaware Plaintiffs acknowledged that likelihood and expressed concern to both the Delaware Court of Chancery and the Delaware Supreme Court about the "severe risk" that an Arkansas judgment on demand futility would precede a Delaware ruling, and the Arkansas judgment would have preclusive effect.[159] Moreover, the Arkansas court took care to protect the interests of the nonparty Delaware Plaintiffs by granting a stay while they pursued their Section 220 litigation in Delaware. The federal court initially stayed the Arkansas proceedings "pending the resolution of the state-court actions in the Delaware Court of Chancery."[160] Thus, that court was willing to stand down and let the Delaware litigation proceed to conclusion.[161]

---

[157] *See supra* notes 27-30 and accompanying text; *Cottrell I*, 737 F.3d at 1243 ("[A] judgment rendered in Delaware will likely preclude subsequent litigation in the Federal proceeding.").

[158] *See Ark. Stay Denial Order*, 2014 WL 12700619, at *2.

[159] *See supra* note 27.

[160] *Ark. Stay Order*, 2012 WL 5935340, at *7.

[161] The Arkansas court acknowledged that it had received a copy of then-Chancellor Strine's order which contemplated the completion of the Section 220 proceedings before the Delaware Complaint would be filed. *See* Stay Hearing Transcript, *supra* note 11, at B175. The Arkansas

40

Third, federal courts have signaled that derivative suits are situations where notice is not required to comply with Due Process.[162]  We need not resolve that issue as it is undisputed that Delaware Plaintiffs had notice of the Arkansas action in this instance.

Federal courts have also looked to Sections 42(1)(d) and (e), and Comments e and f, of the Restatement for further guidance on what qualifies as "adequate" representation in order to comply with Due Process.[163]  Indeed, the Restatement explains that its

court's order granting the initial stay notes the presence of seven derivative actions in Delaware and that, "[t]he claims and parties in this action and the Delaware action[s] are almost identical, and the issues involved overlap substantially." *Ark. Stay Order*, 2012 WL 5935340, at *5, *7.  It reasoned that, "[b]ecause Delaware law is controlling over Plaintiffs' claims, this factor weighs in favor of abstention." *Id.* at *6.  It also stated that "the Court feels that the parties would benefit from the Delaware court's experience in applying its state's law and managing this type of litigation." *Id.*

[162] The United States Supreme Court has stated, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965).  However, several courts have suggested that notice is not required to avoid a Due Process violation in precluding subsequent derivative plaintiffs from litigating demand futility. *See, e.g.*, *Arduini*, 774 F.3d at 637-38.  In *Arduini*, the Ninth Circuit declined to require notice, relying on Fed. R. Civ. P. 23.1(c), which only requires "[n]otice of a proposed settlement, voluntary dismissal, or compromise." *Id.* at 637; *see also* Restatement § 42(1)(a) & cmt. b (mandating notice where "required," such as under "procedural statutes and rules").  The court also looked to Restatement § 41(2), which provides that "[a] person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process." *Arduini*, 774 F.3d at 637.  The court noted that, likewise, the prior derivative plaintiffs in that case were "in essence representing all [company] shareholders when they filed their derivative suit, thus binding subsequent derivative plaintiffs even if they personally did not have notice of the [earlier suit's] dismissal." *Id.*; *see also, e.g.*, *Nathan*, 651 F.2d at 1228 ("[I]n derivative actions nonparty shareholders are not entitled to notice of dismissal following a hearing on the merits.").

[163] *See Nevada v. United States*, 463 U.S. 110, 135 n.15 (1983); *Matsushita*, 516 U.S. at 396 (Ginsburg, J., concurring in part and dissenting in part); *Arduini*, 774 F.3d at 635-36; *Sonus*, 499 F.3d at 64-66; *Hanson*, 2007 WL 5186795, at *6; *Henik*, 433 F. Supp. 2d at 381.  Federal common law governs our analysis of Due Process and, as such, the contours of the required adequacy of the prior representation.  In contrast, the Court of Chancery considered the adequacy of representation

requirements are "closely related to, if indeed they are not particularized expressions of,

the requirements of due process."[164]  In addition to providing that there cannot be a

"substantial divergence of interests" between the representative and the represented,[165] the

Restatement states that the prior representative must not have "failed to prosecute or defend

the action with due diligence and reasonable prudence" such that "the opposing party was

on notice of facts making that failure apparent."[166]  Comment f to Section 42(1)(e) provides

additional commentary describing what constitutes inadequate conduct of litigation.[167]

First, the comment speaks to the *quality* of the representation, by specifying that the

representation must not have been "grossly deficient," and then explaining what that

entails.[168]  Second, the comment speaks to *conflicts of interest*, such as whether the prior

judgment was the product of collusion between the representative and the opposing party

and whether, "to the knowledge of the opposing party, the representative s[ought] to further

---

an issue of Arkansas law.  *See Orig. Op.*, 2016 WL 2908344, at *20 ("Arkansas law controls here").

[164] Restatement § 42(1)(d), (e) & Reporter's Note (noting that the alignment of Sections 41 and 42 with the requirements of due process "historically was obscured by the tendency of courts to see some of these questions in the context of necessary parties issues" and that *Hansberry v. Lee* stands "as a reminder that there are constitutional limits on giving binding effect to litigation conducted through representatives").

[165] *See Taylor*, 553 U.S. at 900; *see also* Restatement § 42(1)(d) (providing that, "[w]ith respect to the representative of a class," representation is inadequate if "there was such a substantial divergence of interest between him and the members of the class, or a group within the class, that he could not fairly represent them with respect to the matters as to which the judgment is subsequently invoked").

[166] Restatement § 42(1)(e).

[167] *Id.* at cmt. f.

[168] *Id.*

his own interest at the expense of the represented person."[169] "[W]hether the representation has been inadequate is a question of fact to be decided in light of the issues presented in the case and the factual and legal contentions that might reasonably have been expected to be presented."[170]

Based on our reasoning, we affirm the Chancellor's ultimate conclusion that the Arkansas Plaintiffs were adequate representatives because, in addition to the absence of any conflicts or other misalignment of interests among the competing sets of plaintiffs in seeking to represent Wal-Mart, (i) the quality of their representation was not grossly deficient, and (ii) their economic interests were not antagonistic to other stockholders.

     *i.*    *The Arkansas Plaintiffs' failure to seek books and records from the Company does not render them grossly deficient representatives.*

Delaware Plaintiffs argue that the Arkansas Plaintiffs demonstrated "grossly deficient," inadequate representation by failing to seek additional books and records despite the Chancellor's warning.[171] They contend that this choice amounts to more than mere "[t]actical mistakes or negligence" or failure "to invoke all possible legal theories or

---

[169] *Id.*; *see also Arduini*, 774 F.3d at 635 ("[W]e have noted that an 'adequate [shareholder] representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class.'" (quoting *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990))).

[170] Restatement § 42 cmt. f.

[171] *See id.* ("Where the representative's management of the litigation is so grossly deficient as to be apparent to the opposing party, it likewise creates no justifiable reliance interest in the adjudication on the part of the opposing party.").

43

to develop all possible sources of proof"—situations that the Restatement views as insufficient grounds to deny preclusive effect to a prior judgment.[172]

Delaware courts have repeatedly urged parties to use Section 220 to seek relevant books and records before filing derivative complaints. The Delaware Plaintiffs contend that, although the *New York Times* article detailed conduct by certain officers and employees and included excerpts to certain key company documents, the documents did not address *board-level* conduct. Thus, they argue that the Arkansas Plaintiffs should have known they would be unable to meet the pleading requirements to establish demand futility, as then-Chancellor Strine had warned.

We might see this as a closer call if the Arkansas Plaintiffs had not obtained *any* documents, particularly since the complaints were focused on the state-law *Caremark* claims.[173] But that is not the case. At the argument on the initial motion to stay in Arkansas, for example, Arkansas Plaintiffs' counsel acknowledged that she shared then-Chancellor Strine's view that "oftentimes it is very hard to implicate the board without seeing some internal documents showing that the board knew of the wrongdoing," but she argued that this situation was different: she stated that internal memoranda in the public domain (linked from the *New York Times* article) "show beyond any doubt that the board

---

[172] *See id.* ("Tactical mistakes or negligence on the part of the representative are not as such sufficient to render the judgment vulnerable.").

[173] *Orig Op.,* 2016 WL 2908344, at *5 (noting that the Arkansas Plaintiffs alleged that certain director defendants breached their duty of loyalty by not acting in good faith to ensure Wal-Mart's compliance with the law, known as a *Caremark* claim (referring to *In re Caremark Int'l Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996))).

of directors was told about the widespread bribery and they were told about the coverup of the widespread bribery back in 2005."[174] Arkansas Plaintiffs' counsel stated, "we thought about [obtaining documents through Section 220] long and hard," but determined that, "[i]n this case we didn't need it because we had these underlying documents."[175]

The Chancellor concluded that "it does not follow that plaintiffs are necessarily inadequate representatives because their counsel chose not to follow a recommended strategy in a different action, even one suggested by a preeminent corporate jurist, particularly when they are litigating in a different jurisdiction before a different judiciary."[176] As the Chancellor recognized, the Arkansas Plaintiffs were represented by more than a dozen attorneys from several firms, and no one argued that they were not experienced counsel. In fact, one lead counsel had successfully litigated a key Delaware Section 220 case, and one of the lead Arkansas Plaintiffs had been lead plaintiff in the *Pyott* case.

Here, the Arkansas Plaintiffs considered making a Section 220 demand, but they decided against it because they considered the documents in the *New York Times* article sufficient.[177] It turns out they were wrong. Although it might have been a tactical error,

---

[174] Stay Hearing Transcript, *supra* note 11, at B208-09.

[175] *Id.* at B209. Arkansas counsel also argued, "I don't think we need [Section 220 books and records] because we have the defendants [*sic*] own - we have them in the cross hairs, Your Honor. We have the document showing that they knew what was going on in 2005, and the majority of the directors are still sitting on the board." *Id.* at B210.

[176] *Orig. Op.*, 2016 WL 2908344, at *20.

[177] *See* Stay Hearing Transcript, *supra* note 11, at B208-10.

the Arkansas Plaintiffs' decision to forgo a Section 220 demand *in this instance* does not rise to the level of constitutional inadequacy.[178] Reasonable litigants can differ on such tactical decisions.

ii. *The Arkansas Plaintiffs did not seek to advance their interests at the expense of the Delaware Plaintiffs.*

The Delaware Plaintiffs argue that Arkansas Plaintiffs "acted to further their own economic interest in litigating in Arkansas," against the Chancellor's warning that plaintiffs should seek Company books and records.[179] Delaware Plaintiffs assert that "[t]he moment they did so, an irreconcilable conflict arose between the Arkansas Plaintiffs and other Wal-Mart stockholders."[180] The Restatement provides that a prior judgment may be denied preclusive effect where, "to the knowledge of the opposing party, the representative seeks to further his own interest at the expense of the represented person."[181] The plaintiffs' interests, as distinguished from the counsels' interests, were identical, as discussed above. Moreover, we see no support for any suggestion that the Arkansas Plaintiffs had an interest

---

[178] *See Bensoussan*, 2016 WL 3407708, at *12 ("[A]lthough it is certainly better a practice for stockholder plaintiffs to use 'the tools at hand' to thoroughly investigate derivative claims before filing suit, the N.Y. plaintiffs' failure to do so in this case falls, in my view, into the category of an imperfect legal strategy and does not rise to the level of litigation management that was so grossly deficient as to render them inadequate representatives."), *aff'd*, 155 A.3d 1283 (Del. 2017); *Norfolk Cty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*, 2009 WL 353746, at *8 (Del. Ch. Feb. 12, 2009) ("Although the prior plaintiff's failure to make a books and records request before filing a derivative lawsuit does not comport with the approach suggested by Delaware courts, that alone does not indicate that he was an inadequate representative."), *aff'd*, 977 A.2d 899 (Del. 2009).

[179] Delaware Plaintiffs' Opening Br. at 29.

[180] *Id.*

[181] Restatement § 42 cmt. f.

46

adverse to Wal-Mart or that they would benefit from harming the Company and, by extension, from harming Delaware Plaintiffs.

In their supplemental briefing following remand, the Delaware Plaintiffs argue that the Court of Chancery erred in "halting" discovery regarding the alleged "conflicts of the Arkansas Plaintiffs' counsel."[182] They further contend that the discovery stay was improper given the Chancellor's "heavy reliance on an affidavit of Arkansas Plaintiffs' counsel," whom they had no opportunity to cross-examine.[183] But the Delaware Plaintiffs confined this argument to a footnote in their opening brief on appeal.[184] Thus, the argument is waived,[185] and we do not address the question of whether discovery might have been appropriate (and, if so, to what extent) as to the asserted conflict among Arkansas Plaintiffs' counsel.

## III.

In conclusion, as we said in *Pyott II,* our state's interest in governing the internal affairs of Delaware corporations must yield to the "stronger national interests that all state and federal courts have in respecting each other's judgments."[186] This delicate balance would be impaired were we to adopt the Chancellor's suggestion to follow the *EZCORP*

---

[182] Delaware Plaintiffs' Supp. Mem. at 20.

[183] *Id.* at 20 n.17.

[184] Delaware Plaintiffs' Opening Br. at 28 n.42.

[185] *See* Del. Sup. Ct. R. 14(b)(vi)(A)(3).

[186] 74 A.3d at 616.

dicta as the rule for determining the preclusive effect of other courts' dismissals based on demand futility.

Accordingly, we affirm the Court of Chancery's dismissal of the Delaware Plaintiffs' complaint. Defendants satisfied the requirements for invoking issue preclusion under either Arkansas law or federal common law. The federal law on the Due Process implications of issue preclusion demonstrates that the application of issue preclusion here does not violate the Due Process rights of the Delaware Plaintiffs. We greatly appreciate the thought and time that the Chancellor and the parties devoted to this important matter.